POPE AUTOMATIC MERCHANDISING CO. et al. v. McCRUM-HOWELL CO.

(Circuit Court of Appeals, Seventh Circuit.   July 27, 1911.)

No. 1,752.

TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—SIMILARITY IN APPEARANCE.

The manufacturer of an unpatented mechanical implement, who has selected unpainted aluminum as the most suitable material and has adopted the most simple, efficient, and economical form of construction

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in which the combination can probably be embodied, with nothing for embellishment or distinction, except a name plate, cannot charge a competitor with unfair competition, because, for the same utilitarian reasons, he uses the same construction in all respects, excepting as to the nameplate, which he makes distinctive, and no deception of purchasers is shown.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

Unfair competition in use of trade-mark or trade-name, see note to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the McCrum-Howell Company against the Pope Automatic Merchandising Company and Clarence R. Pope. Defendants appeal from an order granting a preliminary injunction. Reversed.

Frederick A. Brown, for appellants.
Hillary C. Messimer, for appellee.

Before GROSSCUP and BAKER, Circuit Judges, and SANBORN, District Judge.

BAKER, Circuit Judge. By a preliminary injunctional order appellants are restrained from making and selling suction cleaners of a certain type. No patent for mechanism or process or product or design is involved. Nor is infringement of trade-marks or trade-names alleged. Unfair competition in trade is the sole basis of the case.

Appellee, prior to the bringing of this suit, was marketing a suction cleaner that bore a plate carrying the trade-name "Richmond" and the name and address of appellee as maker. At the same time appellants were putting out a ·cleaner of identical mechanical principles and arrangement of parts, of identical form, and of identical color. To appellants' cleaner· was affixed a name-plate much larger than appellee's, as large as could well be attached, displaying conspicuously a red cross and the words in large capitals, "The Pope Electric Cleaner, Made by the Pope Co., Chicago, U. S. A."

Appellee was senior in the field; and the affidavits may warrant a conclusion that appellants deliberately copied the mechanism, form, and color of appellee's cleaner with a view of sharing in the trade. built up by appellee's pushing of the "Richmond." As appellants' trade-mark, trade-name, and name and address of maker, were unmistakably distinguished from appellee's, infringement must rest upon appellee's exclusive right to the mechanics and the form and the color of its cleaner or one or more of them.

Mechanically the cleaner is this: At the bottom is a mouth-piece, to rest upon the carpet or other material to be cleaned. Next above the mouth-piece is a rotary fan, inclosed in the necessary casing. Just above the fan, and on the same perpendicular axis, is an electric motor in a ventilated casing. To the top of the motor casing a· detachable handle is affixed at an angle of about 45 degrees from the per-

pendicular. In the fan casing is an opening around which one end of a cloth bag to receive the dust is fastened; the other end being attached to the handle; these parts, with the switch, socket, and cord for supplying current to the motor, making up a combination that has many advantages and that probably is the best mechanical arrangement for a vacuum cleaner that is to be carried about as a single tool. But in the absence of a patent this particular combination must be viewed as the culmination of a mechanical evolution, to the equal benefits of which all society is entitled. Indeed, appellee does not deny appellants' right to use the exact combination if they had given the fan and motor casings and other exterior parts different form and color.

In form the mouth-piece is common and old, antedating appellee. To be efficient, the inner surface of the fan casing has to be cylindrical. If the casing is to be cut from metal of even thickness, as it comes in sheets, the outer surface, too, cannot be other than cylindrical. As the motor is of less diameter than the fan (from proper mechanical relations of power), the motor casing naturally (from motives of economy in materials and labor) is a smaller cylinder. The ventilating opening in the motor case, the dust opening in the fan case, the handle, the bag, the electric connections, are all either in their inevitable or best possible mechanical locations. In short, appellee uses the most efficient and most economically manufactured form into which the mechanical combination can probably be embodied. Not a line, nor a curve, not a mark, not a bit of superfluous material, for embellishment or distinction. Nothing but the name-plate. If appellants should be required to give a square or hexagonal or other than cylindrical form to the outer surface of the casings, considerations of cost of the superfluous material and labor might prevent them from competing with appellee in the manufacture and sale of a mechanism that was equally open to both. In the Singer Case, 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, the Supreme Court held that at the expiration of a machine patent the utilitarian form in which the patentee had embodied his mechanical combination also became public property. No difference in principle is perceived between a machine that after a period of 17 years becomes free for common use and one that has been such all the time.

Aluminum is the metal used. Its advantages in strength, in durability, in lightness of weight, and in freedom from tarnish have led to its adoption for various utensils and tools. Appellee can have no monopoly of its use for this tool. In both cleaners the metal is unpainted. If appellants should be compelled to paint their cleaner a distinctive color, they would increase their manufacturing cost and would also lose one of the main advantages of a metal that was as open to them as to appellee and that was as obviously the best as a material as the cylinder was as a form.

Development in a useful art is ordinarily toward effectiveness of operation and simplicity of form. Carriages, bicycles, automobiles, and many other things from diversity have approached uniformity through the utilitarian impulse. If one manufacturer should make

an advance in effectiveness of operation, or in simplicity of form, or in utility of color; and if that advance did not entitle him to a monopoly by means of a machine or a process or a product or a design patent; and if by means of unfair trade suits he could shut out other manufacturers who plainly intended to share in the benefits of the unpatented utilities and in the trade that had been built up thereon, but who used on their products conspicuous name-plates containing unmistakably distinct trade-names, trade-marks, and names and addresses of makers, and in relation to whose products no instance of deception had occurred—he would be given gratuitously a monopoly more effective than that of the unobtainable patent in the ratio of eternity to 17 years.

Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.